**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | KAREN M. WILLIAMS |
| *Plaintiff,* | |
| | Crim. No. 02-684 (KMW) |
| v. | |
| LORENZO HA RDWICK, | **OPINION** |
| *Defendant.* | |

**THIS MATTER** comes before the Court upon Defendant Lorenzo Hardwick's ("Defendant") Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 636). The Government opposes Defendant's motion. (ECF No. 638). For the reasons set forth below, the Court **DENIES** Defendant's motion.

## I.      BACKGROUND

The Court sets forth the details related to Defendant's crimes of conviction and the sentencing process for the purposes of contextualizing the basis of Defendant's detention, not to highlight his prior criminal behavior or discount Defendant's efforts at rehabilitation. Defendant is an inmate in federal custody at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"). (ECF No. 636[1] at p. 9; ECF No. 638[2] at p. 19.) From approximately January 1998 through September 2002, Defendant belonged to the Perez Organization ("Organization"), a drug trafficking organization that controlled several drug distribution locations throughout Camden, New Jersey where it distributed heroin and crack cocaine. (ECF No. 638 at pp. 1–2.) In furtherance

---

[1] Petitioner's Br. (ECF No. 636 at p. 23).
[2] Government's Opp. (ECF No. 638 at pp 12-13).

of its narcotics trafficking operation, the members of the Organization committed violent acts, including assault and murder. (*Id.* at p. 1.)

Defendant and co-defendant Arnaoldo Gomez ("Gomez") co-managed the Organization's drug distribution set located at Seventh and Vine Streets in Camden. (*Id.* at p. 2.) When Gerard Jackson ("Jackson"), a local drug dealer who sold drugs out of his home, started cutting into the Organization's business, Defendant and Gomez confronted him. (*Id.*) During a later altercation between Jackson and other members of the Organization, one of Jackson's associates, Hiram "Chubby" Rosa ("Rosa"), interjected in Jackson's defense. (*Id.*). Subsequently, Defendant, along with other members of the Organization, decided to kill Rosa. (*Id.*)

On February 19, 2001, Defendant drove a van with members of the Organization to search for Rosa. (*Id.*) When they found him in front of the Rutgers University dormitories, he fled in his car. Defendant drove after him, cut him off, blocked Rosa's car with the van so he could not escape, and then Enrique "Rick" Perez ("Perez") and Allen "Tito Allen" Resto ("Resto") exited the van and shot and killed Rosa. (*Id.*) Afterward, Defendant hid the van in a nearby neighborhood. (*Id.*)

On February 22, 2005, a federal grand jury returned a superseding indictment charging Defendant and several co-defendants with narcotics and firearms offenses arising from their participation in the Organization. (*See* ECF No. 144.[3]) Following a jury trial, Defendant was convicted of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and fifty grams or more of crack cocaine ("Count One"), as well as two violations of 18 U.S.C. § 924(c) ("Count Five" & "Count Six"). (*See* ECF No. 275.)[4]

On April 28, 2006, the Honorable Robert B. Kugler imposed a sentence of life imprisonment on Count One, which included a sentencing cross-reference under U.S.S.G. § 2A1.1

---

[3] Superseding Indictment (ECF No. 144)
[4] Jury Verdict (ECF No. 275)

for the murder of Rosa. On Count Five, Judge Kugler sentenced Defendant to a consecutive sixty-month term of imprisonment, and on Count Six Judge Kugler sentenced Defendant to a consecutive three-hundred-month term of imprisonment. (ECF No. 320[5] at p. 2.) On direct appeal, the United States Court of Appeals for the Third Circuit affirmed Defendant's convictions but remanded for resentencing after the Government conceded that Defendant could only be convicted of a single violation of 18 U.S.C. § 924(c). (ECF No. 389[6] at p. 2.)

On January 5, 2010, Judge Kugler dismissed Count Six and reimposed Defendant's sentence of life imprisonment on Count One followed by a consecutive sixty-month sentence on Count Five. (*See* ECF No. 418[7] at p. 2.) On the same date, Judge Kugler revoked Defendant's supervised release in Criminal No. 92-558 and imposed a consecutive twenty-four-month sentence of imprisonment. (Case No. 92-cr-558, ECF No. 37 at p. 2.) The United States Court of Appeals for the Third Circuit subsequently affirmed Defendant's amended judgment of conviction. (ECF No. 485[8] at pp. 1-2.)

Defendant later sought to vacate his sentence pursuant to 28 U.S.C. § 2255. (Case No. 12-cv-7158, ECF No. 1.) Judge Kugler denied Defendant's § 2255 motion, as well as Defendant's subsequent motions for reconsideration. (*See* Case No. 12-cv-7158.)

In August 2019, Defendant filed his first motion for a sentence reduction under the First Step Act. (ECF No. 638 at p. 5.) The Court initially denied the motion, after which Defendant appealed. (*Id.*) The Third Circuit remanded the matter for additional findings, counsel was

---

[5] Judgment (ECF No. 320)

[6] *United States v. Hardwick*, 544 F.3d 565 (3d Cir. 2008) (ECF No. 389 at p. 2)

[7] Judgment on Re-Sentencing (ECF No. 418 at p. 2)

[8] Judgment of Third Circuit re *United States v. Hardwick*, 455 F. App'x 151 (3d Cir. 2011) (ECF No. 485 at pp. 1-2)

3

appointed, supplemental briefing was submitted, and Judge Kugler held a hearing on November 6, 2020. (*Id.* at pp. 5–6.)

Although Judge Kugler concluded that Defendant was eligible for consideration under the First Step Act, he declined to reduce Defendant's sentence after considering the applicable Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a). (*Id.* at pp. 5–7.) The Third Circuit affirmed the denial of Defendant's First Step Act motion on January 14, 2022. (*Id.* at p. 6.)

On July 25, 2025, Defendant filed a motion seeking appointment of counsel (ECF No. 628). After consulting with the Office of the Federal Public Defender, Defendant indicated he wished to proceed *pro se*. As such, the Court has deemed his pending motion as withdrawn.

On March 2, 2026, Defendant filed the present *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (See ECF No. 636).[9] The Government opposes Defendant's request for a sentence reduction. (See ECF No. 638.)

## II.   **LEGAL STANDARD**

The changes implemented by the First Step Act allow prisoners to directly petition the sentencing court for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). First, however, prisoners must satisfy the administrative exhaustion requirements laid out in the statute. *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *2 (D.N.J. May 15, 2020). To exhaust administrative remedies, a defendant must present his request for compassionate release to the warden of his prison. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Thirty days after submitting the request or receiving a denial, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.*

A court may reduce a defendant's term of imprisonment "after considering the factors

---

[9] In his submissions Defendant has provided evidence that he exhausted his administrative remedies by seeking a sentence reduction through the warden of his current Bureau of Prisons ("BOP") facility.

4

set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The sentencing factors under 18 U.S.C. § 3553(a) require courts to consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant. *See* 18 U.S.C. § 3553(a).

"Compassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023); *see also United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (holding that the district court acted within its discretion to deny compassionate release based on the § 3553(a) factors even where the Government did not dispute that extraordinary and compelling reasons were present). The defendant bears the burden of showing that he is entitled to compassionate release. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the U.S. Sentencing Commission (the "Commission") with providing further guidance. Congress's only instruction on this point was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission amended the Guidelines effective November 1, 2023. *See United States v. Tobolsky*, Crim. No. 21-303, 2024 WL 323476, at *2 (D.N.J. Jan. 29, 2024). As part of the

5

amended Guidelines, the Commission updated a policy statement regarding when a reduction in a term of imprisonment may be appropriate under 18 U.S.C. § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13 (the "Policy Statement"). The Policy Statement states in relevant part:

> (a)    In General.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; . . .
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) The reduction is consistent with this policy statement.

The Policy Statement further provides that a nonretroactive change in law can be considered an extraordinary and compelling reason to warrant a sentence reduction for an "[u]nusually [l]ong [s]entence," as follows:

> if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> U.S.S.G. § 1B1.13(b)(6).

## III.    **DISCUSSION**

Defendant argues that he should be released because: (1) he is serving an unusually long sentence that would be shorter if he were resentenced today (ECF No. 636 at p. 25); (2) he is suffering from a serious medical condition (*Id.* at p. 6); and (3) he has been rehabilitated while

6

incarcerated. (*Id.* at 29-32). The Court finds that Defendant has not established that these reasons merit a reduction to his sentence.[10]

### a. The Section 3553(a) Factors

The Court begins by weighing the Section 3553(a) factors, which provide an alternate and independent basis for denial of compassionate release. *See United States v. Babbs*, No. CR 15-195 (GC), 2023 WL 4686323, at *5 (D.N.J. July 21, 2023). The Court finds that the Section 3553(a) factors weigh heavily against Defendant's request for compassionate release.

Here, Defendant argues that he is less culpable than his co-defendants because, although he participated in Rosa's murder, he "was not the shooter." (*Id.* at p. 23.) But the nature and circumstances of Defendant's offenses were particularly violent. *See* 18 U.S.C. § 3553(a)(1). While Defendant may not have pulled the trigger, he was not a passive bystander in the Rosa murder either. The record reflects that Defendant convened with co-defendants and affirmatively decided to kill Rosa. Defendant then helped carry out that murder when he drove the van to search for Rosa, pursued him when Rosa attempted to flee, used the van to block his escape, watched as Perez and Resto fatally shot Rosa, and then disposed of the van. (*See* ECF No. 383 at p. 2.) Further, the Court notes that all of this was done in furtherance of a drug distribution enterprise that Defendant played a managerial role in. Defendant's participation in these events weighs heavily against a reduction in sentence under § 3553(a). *See* 18 U.S.C. § 3553(a)(1), (2).

Additionally, Defendant's criminal history demonstrates that he continuously engaged in significant criminal conduct prior to his current incarceration. Defendant was convicted multiple times for various offenses, many of which were violent. Some of those convictions included

---

[10] "Put simply, the First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction . . . Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it." *United States v. Concepcion*, 597 U.S. 481, 502 (2022).

7

multiple burglaries, possession of a controlled substance with intent to distribute within 1,000 feet of a school, felon in possession of a firearm, and conspiracy to commit racketeering. (*See* ECF No. 638 at pp. 11-12). Despite his various convictions and sentences, Defendant violated his parole when he was arrested for new crimes and was not deterred from committing the present offense. (*See id.*)

Thus, the Court finds that Defendant's imposed sentence was necessary to deter Defendant from future criminal conduct and reflect the seriousness of his persistent violent and dangerous conduct. 18 U.S.C. § 3553(a)(2)(A)-(C). Accordingly, the Court finds that the Section 3553(a) factors weigh against Defendant's release and will deny his motion on this basis alone.[11] *See Babbs*, 2023 WL 4686323, at *5.

### b. Extraordinary and Compelling Reasons

#### i. The Unusually Long Sentence Provision Does Not Support Defendant's Release.

Defendant argues that if he had been sentenced today the disparity with his sentence would be drastic. (ECF No. 636 at p. 23.) Notably, Defendant did not raise this ground for compassionate release in his request to the BOP. (*See id.* at pp. 57-59.) The exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) is mandatory. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). BOP regulations require that requests for compassionate release be made in writing and contain, at a minimum, "[t]he extraordinary or compelling circumstances that the inmate believe warrant consideration." C.F.R. § 571.61(a)(1). "[T]he Court must enforce the BOP regulations to ensure that requests for compassionate release are properly exhausted." *United States v. McNair*, 481 F. Supp. 3d 362, 367 (D.N.J. 2020). To prevent bypassing this requirement, "issue exhaustion"

---

[11] The Court notes that, while insufficient to overcome the Section 3553(a) factors, Defendant's participation in BOP programming is laudable and Defendant is strongly encouraged to continue his efforts at self-improvement.

8

applies to motions under § 3582(c)(1)(A). *Id.* at 366-67. Thus, the Court finds that Defendant has failed to exhaust administrative remedies with respect to his request for compassionate release due to an unusually long sentence.

Even if issue exhaustion did not bar this ground for a reduction in sentence, Defendant does not qualify for relief under the unusually long sentence provision of the Sentencing Commission's policy statement for three reasons: (1) Defendant has not identified a specific change in law that would result in a disparity between his current sentence and the sentence that would likely be imposed today for the same offense; (2) Defendant is not serving an "usually long sentence" because if he were resentenced today, the Court finds that he would likely receive a similar term; and (3) non-retroactive changes in sentencing law cannot constitute "extraordinary and compelling" circumstances pursuant to § 3582(c)(1)(A). *See United States v. Rutherford*, 120 F.4th 360, 372-76 (3d Cir. 2024); *United States v. Resto*, No. CR 02-684 (KMW), 2024 WL 5249246, at *7 (D.N.J. Dec. 30, 2024).

Defendant argues that he is serving an unusually long sentence within the meaning of U.S.S.G. § 1B1.13(b)(6) because if he "committed these same offenses in 2026 and were sentenced today, he would be subjected to a statutory maximum of 25 years." (ECF No. 636 at p. 25.) Defendant also argues that he has served twenty-three years of his sentence, which is "over twice the time permitted by statute." (*Id.* at p. 26.) Defendant frames his arguments primarily in terms of legislative changes affecting drug-related offenses. However, he does not address the fact that his sentencing advisory Guidelines range was not driven by the drug related offenses, but by the cross-reference under U.S.S.G. § 2A1.1 for murder. Accordingly, Defendant's advisory Guidelines range was not altered by subsequent amendments to the drug sentencing laws.

9

Furthermore, the Court finds that Defendant's sentence of life imprisonment as the result of a cross reference to first degree murder for his participation in the killing of Hiram Rosa is not unusually long in comparison to similar offenders who committed similar crimes. According to the Sentencing Commission's Interactive Data Analyzer,[12] in fiscal years 2015 through 2025, 137 offenders with a criminal history category VI were sentenced under U.S.S.G. § 2A1.1. Forty-five of those offenders, that is, 32.8%, were sentenced to life imprisonment. An additional 26.6% of those offenders were sentenced to a minimum of 25 years. Thus, Defendant's sentence of life imprisonment, cannot be "unusually long" when more than one third of similarly situated defendants received similar terms of imprisonment, and more than half offenders were sentenced to a term of imprisonment that, at minimum, was longer than the time that Defendant has served at this point.

Finally, even if Defendant identified a specific change in the law that resulted in a disparity with his current sentence, it would not constitute an extraordinary and compelling circumstance justifying relief unless Congress made that change retroactive. *See, e.g., Rutherford*, 120 F.4th at 376 (post-amendment affirmation that the nonretroactive change in sentencing law under § 924(c) cannot be a basis for consideration for compassionate release, alone or in combination with other factors); *Resto*, 2024 WL 5249246, at *7 (discussing *Rutherford*); *United States v. Rodriguez*, 2023 WL 4077341, *2 (3d Cir. 2023) (holding that "not benefitting from the non-retroactive application of *Nasir* is not extraordinary or compelling.").

Accordingly, the Court will not grant Defendant's Motion for Compassionate Release under the "unusually long sentence" provision.

---

[12] *See* https://ida.ussc.gov/.

### ii.  Defendant's Medical Conditions Are Not Extraordinary and Compelling Grounds Warranting Release.

Defendant also argues that his medical conditions warrant his compassionate release. (ECF No. 636 at pp. 6-11.) To justify compassionate release on the grounds of his medical conditions, Defendant cites his hypertension and ongoing cardiovascular issues such as congenital heart disease, coronary artery disease, and a history of cardiac arrest. Defendant further points to his hyperlipidemia, high cholesterol, and pre-diabetes. The Court finds that Defendant's medical conditions, singularly or in combination, do not constitute extraordinary and compelling reasons warranting his early release.

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13(b)(1) provides that "extraordinary and compelling reasons" exist where:

> Medical Circumstances of the Defendant.—
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>> (ii) from a serious functional or cognitive impairment, or
>> (iii) experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

11

Here, Defendant has failed to present sufficient evidence to demonstrate that his medical conditions justify early release. While he contends that he is not receiving adequate cardiac care, based on his existing conditions, the BOP has classified Defendant's medical status as "Care 2." This means that Defendant is a "stable outpatient" who receives clinical evaluation, either by a primary care physician or a specialist, every six months. https://www.bop.gov/resources/pdfs/care_level_classification_guidance_102025_final.pdf (last visited July 14, 2026.) With regard to cardiovascular conditions, this means that Defendant has "mild symptoms and slight limitations during activity." (*Id.*) For hypertension it means that Defendant requires three or more medications to control his blood pressure, or that he has a persistent hypertension related complication. (*Id.*) Nothing in the record indicates that Defendant's medical conditions prevent him from caring for himself or participating in daily activities.

Additionally, the Court notes an apparent inconsistency in Defendant's asserted grounds for compassionate release based on compelling medical circumstances and his contention that he will obtain a commercial driver's license and drive tractor trailers if released. Defendant contends that his cardiovascular disease and hypertension are sufficiently serious to constitute extraordinary and compelling reasons warranting release. Yet, in his proposed release plan, Defendant states that, upon release, he intends to reside in Camden, New Jersey, and "plan[s] on taking [his] CDL test and driving Tractor Trailers." (ECF No. 636 at p. 9.) However, to obtain a commercial driver's license, an applicant must obtain a medical examiner's certificate from a federally certified medical examiner demonstrating that the applicant satisfies the applicable federal physical qualification standards. *See* N.J. Motor Vehicle Comm'n, *Commercial Driver License Self-Certification and Medical Examiner Certificate,* https://www.nj.gov/mvc/drivertopics/cdlmedcert.htm (last visited July 14, 2026); 49 C.F.R. § 391.41. Those federal standards include cardiovascular and blood-

12

pressure qualifications. *See* 49 C.F.R. § 391.41(b)(4), (6). Although the Court makes no finding as to whether Defendant ultimately could satisfy those standards, his stated intention to pursue employment as a commercial tractor-trailer driver is difficult to reconcile with his assertion that his cardiovascular conditions and hypertension are so debilitating as to constitute extraordinary and compelling reasons for compassionate release.

Accordingly, the Court finds that Defendant's medical conditions do not rise to the level of extraordinary and compelling circumstances warranting his early release.

### iii. Defendant's Rehabilitation Alone Is Not An Extraordinary and Compelling Reason for Early Release.

Finally, having rejected all of Defendant's other arguments, the Court notes that Defendant's rehabilitation while incarcerated is not an independent ground for compassionate release. To wit, the Sentencing Commission's policy statement states, "Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d); *see also Resto*, 2024 WL 5249246, at *6 ("[R]ehabilatation of the defendant alone shall not be considered an extraordinary and compelling reason."). The Court further notes that federal inmates are expected to take classes, participate in BOP programming, and attempt to rehabilitate themselves. While the Court praises Defendant for doing so, it does not find that Defendant's rehabilitation by itself constitutes an extraordinary and compelling reason to grant his request for early release.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Compassionate Release (ECF No. 636). An Order consistent with this Opinion will be entered.

Dated: July 23rd, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

14